IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARY ELLEN JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 5:15-CV-00297-RCL |
| | § | |
| SOUTHWEST RESEARCH | § | |
| INSTITUTE, | § | |
| | § | |
| Defendant. | § | |

MOTION FOR JUDGMENT ON THE VERDICT

Plaintiff Mary Ellen Johnson files this Motion for Judgment on the Verdict, and respectfully shows the following:

**I.      The Title VII $300,000 damage cap does not reduce the jury's $410,000 award because the damage cap only applies to compensatory and punitive damages, but not to back pay, front pay, or other equitable relief.**

On April 5, 2019, the jury found that Southwest Research retaliated against Johnson because of her reports of sex discrimination and discriminated against her based on her sex in provision of tuition reimbursement. *See* Doc. 142 at 1. The jury awarded Johnson $150,000 in back pay and $260,000 in compensatory damages for a total of $410,000. *Id.* at 2-3.

Because the compensatory damages are under $300,000, the $300,000 Title VII damage cap does not reduce the total damages awarded by the jury in this case.

The Title VII damage caps are found in 42 U.S.C. § 1981a(b)(3).  First, the text of the statute explicitly states that backpay and interest on backpay is not considered compensatory damages:

> Compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964.

42 U.S.C. § 1981a(b)(2).  The text of the statute then expressly limits the damage caps only to compensatory and punitive damages:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section shall not exceed . . . in the case of a respondent who has more than 500 employees . . . $300,000.

42 U.S.C. § 1981a(b)(3)(D).  Further, in *Pollard v. E.I du Pont de Nemours & Co.* the Supreme Court held that not only did the caps not apply to backpay and interest on backpay, but also that they did not apply to or limit front pay.  532 U.S. 843, 848-52 (2001) ("[W]e hold that the statutory cap of § 1981a(b)(3) is inapplicable to front pay.").

Here, because the jury's compensatory damage award is under $300,000, and the backpay award of $150,000 is not subject to the damage caps, the § 1981a(b)(3) damage cap does not prohibit recovery of the full $410,000 awarded by the jury.

II.   **The proposed judgment includes the $150,000 in back pay awarded by the jury.**

The jury awarded a total of $150,000 in back pay to compensate Johnson.  *See* Doc. 142 at 2-3 ($335,624 - $185,624 = $150,000).  As discussed above, the Title VII

damage cap does not apply to the backpay award.  Therefore, the judgment should award the full amount.

### III.   The judgment should include the $260,000 in past and future compensatory damages awarded by the jury.

The jury awarded $200,000 for past pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.  Doc. 142 at 2.  The jury awarded an additional $60,000 for future pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.  *Id.*  Here, the applicable cap is $300,000 because Southwest Research employees more than 500 people. *See* 42 U.S.C. § 1981a(b)(3).  However, since the total compensatory damage award of $260,000 is below the $300,000 limit, the damage cap does not affect the jury's award.  Therefore, this amount should be awarded in full.

### IV.   The judgment should include at least $54,918 in prejudgment interest on the backpay award.

In *Peques v. Mississippi State Employment Service*, the Fifth Circuit said, "We have stated in this Circuit that under Title VII interest is an item that 'should be included in back pay' to make a victim whole."  899 F.2d 1449, 1453 (5th Cir. 1990) (quoting *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 263 (5th Cir. 1974)).

When a federal statute is silent on the rate of prejudgment interest, courts look to state law for guidance.  *See Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 984-85 (5th Cir. 1991) *abrogated on other grounds by CIGNA Corp v. Amara*, 563 U.S. 421 (2011). Here, the Texas Finance Code states that prejudgment interest should be calculated at "the prime rate as published by the Board of Governors of the Federal Reserve

System on the date of computation." Tex. Fin. Code § 304.003(a),(c)(1).  The current prime rate is 5.5%.  *See* https://www.federalreserve.gov/releases/h15 (listing Bank prime loan rate of 5.5%) (last visited on April 11, 2019).

Finally, "District courts generally should calculate interest on back pay and past damages based on the date of the adverse action." *Thomas v. Tex. Dep't of Crim. Justice*, 297 F.3d 361, 372 (5th Cir. 2002).  Here, the date of the adverse action is August 15, 2012.  Doc. 109 at 2 ¶ 15.  Therefore, the calculation of prejudgment interest should date back to August 16, 2012.

Applying the above, the simple daily interest rate on the backpay award of $150,000 is calculated by multiplying $150,000 by .055 and then dividing the result by the number of days in a year, or 365:

$$\frac{\$150{,}000 * .055}{365} = \$22.60$$

The total amount of prejudgment interest is then calculated by multiplying $22.60 per day by the number of days since August 16, 2012 until the date judgment is entered.  For example, if judgment is entered on April 12, the number of days would be 2430.[1]  Performing that calculation shows that the total prejudgment interest through April 12, 2019 is $54,918.

---

[1] The number of days was calculated using the following computation tool:
https://www.wolframalpha.com/input/?i=August+16,+2012+until+April+12,+2019

**V.**     **The judgment should include two years of front pay in lieu of reinstatement.**

Under Fifth Circuit precedent, "[a]lthough the preferred equitable relief is reinstatement . . . front pay is appropriate when reinstatement is not feasible." *Reneau v. Wayne Griffin & Sons, Inc.,* 945 F.2d 869, 870 (5th Cir. 1991). Just last month the Fifth Circuit, in reversing and remanding a district court that failed to award either reinstatement or front pay, summarized prior precedent in this area as follows:

> Our caselaw contemplates that one form of prospective relief will ordinarily be appropriate when it is requested. We have often said that the trial court's remedial discretion in this area involves the *selection between* reinstatement and front pay. The typical "either/or" nature of this remedial choice is also seen in our statement that "if reinstatement is not feasible, front pay is the appropriate award." In discussing another federal employment statute (the retaliation provision of the Fair Labor Standards Act), Judge Wisdom went so far as to say that "it is impossible for us to imagine cases when a denial of both reinstatement and reimbursement would be justified."

*Bogan v. MTD Consumer Grp., Inc.*, 919 F.3d 332, 336 (5th Cir. 2019) (quotations and citations omitted). Further, the Fifth Circuit holds that providing either front pay or reinstatement is still proper even if the factfinder determines that a prevailing plaintiff failed to mitigate damages:

> This court has recently held that a factfinder's determination that an employee failed to mitigate damages so that she is not entitled to back pay does not compel the same finding on the issue of mitigation for the purposes of determining entitlement to front pay relief. *See Giles* [*v. General Elec., Co.*, 245 F.3d 474,] 489-90 [(5th Cir. 2001)](finding that court did not abuse its discretion in granting front pay award where, as the factfinder, the court found a failure to mitigate damages for the purposes of back pay relief and denied back pay damages). The *Giles* decision recognizes that the employee's duty to mitigate serves different purposes for the separate determinations of

entitlement to back pay relief versus front pay relief. *See id.* The *Giles* holding further establishes that a factfinder may properly make differing factual determinations as to whether an employee sufficiently mitigated her damages for front pay versus back pay purposes based on the same evidence of mitigation.

*Hooker v. Victoria's Secret Stores, Inc.,* 281 F.3d 1278, No. 01-60016, 2001 WL 1692436 at \*7 (5th Cir. 2001) (per curiam).

Here, the evidence presented at trial shows that reinstatement is not feasible. On the final day of trial, Mary Massey, the head of Division 11, testified that given Johnson's history, it would not be advisable for Southwest Research to rehire her. Since reinstatement is not feasible, front pay should be awarded.

Johnson requests two years of front pay.  The evidence at trial supports two years of front pay because the evidence showed that Johnson's termination and incident report both prevent her from finding substantially equivalent employment. Indeed, Southwest Research's own attorney implied heavily during part of his questioning of Johnson that her failure to find a job was due to the fact that she told employers she had been terminated because of discrimination.

Moreover, several witnesses testified about the devasting effect of having an incident report in JPAS.  According to the testimony from Plaintiff, James Johnson (her husband), Stephen Padilla, and Dave King, having an incident report essentially blacklists Johnson within the government contracting, security clearance community in which she worked and would like to work in again.  The evidence at trial shows that as it currently stands, Johnson is caught in a Catch-22 where she cannot get a substantially equivalent job with an incident report on her record but cannot get rid

of the incident report without getting a substantially equivalent job.  This point was most effectively made by Johnson's own husband who said that even he would not hire someone in a position similar to Johnson's.

For the foregoing reasons, this Court should award $100,880, or two years of front pay to Johnson.

**VI.     The judgment should include other equitable and injunctive relief in order to make Johnson whole.**

In *Claiborne v. Illinois Central Railroad*, the Fifth Circuit held:

> The aim of Title VII relief, whether back-pay, retroactive seniority, or other injunctive relief, is thus to make whole the victims of discrimination according to what would have been their experience in a non-discriminatory work setting.

583 F.2d 143, 149 (5th Cir. 1978).  To that end, this Court has broad equitable powers to "make possible the fashioning of the most complete relief available." *Peques*, 899 F.2d at 1453 (citing *Teamsters v. United States,* 431 U.S. 324, 364 (1977)) (quotations omitted).  Under Supreme Court precedent:

> [D]istrict courts have not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.

*Teamsters*, 431 U.S. at 364 (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975)).

Here, in order to make Johnson whole, additional relief is required. Specifically, this Court should order Southwest Research to submit a letter or other communication to JPAS rescinding its adverse information report, stating that it no longer considers Johnson an insider threat, and notifying JPAS of the jury verdict

finding that Johnson would not have been terminated but for her reports of sex discrimination.

This additional relief is necessary because as described in the previous section, Ms. Johnson's incident report is having a direct effect on her ability to obtain substantially equivalent employment.

Ordering Southwest Research to send a letter to JPAS, while not eliminating the incident report would make it more likely that a company would sponsor Johnson's security clearance investigation because it would be more likely that there would be a successful resolution of the incident report. Unless something is done to lessen the impact of the incident report, Ms. Johnson will continue to suffer the effects of Southwest Research's retaliatory actions.

Southwest Research may argue, as it did at trial, that it cannot remove adverse information from JPAS.  However, the requested relief does not ask that Southwest Research remove it.  Instead, the relief simply seeks to require Southwest Research to provide additional information to JPAS notifying JPAS that it revokes the prior adverse information report, states that it no longer views Johnson as an insider threat, and informs JPAS that a jury has found Southwest Research would not have fired Johnson but for her reports of sex discrimination.

Such additional relief is not only permissible, but necessary to "eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Teamsters*, 431 U.S. at 364.

## **PRAYER**

For the forgoing reasons, Plaintiff moves for judgment on the jury verdict, seeks front pay in the amount of $100,880 in lieu of reinstatement, and equitable relief of requiring Southwest Research submit additional information to JPAS, and to such other relief to which Plaintiff may be entitled.

Respectfully submitted,
WILEY WALSH, P.C.

By: _____*/s/ Colin Walsh*_____
Colin Walsh
Texas Bar No. 24079538
*Board Certified Specialist, Texas Board of Legal*
*Specialization, Labor and Employment Law*
Jairo Castellanos
Texas Bar No. 24089264

WILEY WALSH, P.C.
1011 San Jacinto Blvd., Ste. 401
Austin, TX 78701
Telephone: (512) 27-5527
Facsimile: (512) 201-1263
colin@wileywalsh.com

Kalandra Wheeler
Texas Bar No. 24051512
*Board Certified Specialist, Texas Board of Legal*
*Specialization, Labor and Employment Law*

ROB WILEY, P.C.
1651 Richmond Ave.,
Houston, TX 77006
Telephone: (713) 337-1333
Facsimile: (713) 337-1334
kwheeler@robwiley.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF CONFERENCE

I hereby certify that from April 9 through April 12, 2019, Attorneys for Plaintiff and Defendant conferred about the subject matter of this motion but were unable to reach agreement.

> _/s/Colin Walsh_
> Colin Walsh

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2019, I served a copy of the foregoing on counsel for Defendant via the Court's CM/ECF system.

> _/s/ Colin Walsh_
> Colin Walsh