IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MARY ELLEN JOHNSON, § § § Plaintiff, § § v. § CASE NO. 5:15-CV-00297-RCL § SOUTHWEST RESEARCH INSTITUTE, § § Defendant. § § | |

PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO
THE MOTION FOR JUDGMENT ON THE VERDICT

**I.    In order to make a plaintiff whole, Fifth Circuit precedent generally requires prospective relief in the form of reinstatement or front pay.**

The most recent Fifth Circuit case on providing prospective relief, decided less than one month ago, states:

> Our caselaw contemplates that one form of prospective relief will ordinarily be appropriate when it is requested. We have often said that the trial court's remedial discretion in this area involves the *selection between* reinstatement and front pay.

*Bogan v. MTD Consumer Grp., Inc.*, 919 F.3d 332, 336 (5th Cir. 2019) (quotations and citations omitted) (emphasis in original). In *Bogan*, a unanimous panel of the Fifth Circuit reversed a trial court who found that both front pay and reinstatement were inappropriate, leaving the plaintiff with no prospective relief despite a jury verdict finding discrimination. *Id.* The Fifth Circuit described cases where no prospective relief was awarded as "outlier situations" and pointed out that there is only one Fifth Circuit opinion affirming such a result. *Id.* at 337. The *Bogan* panel then found that while there was no clear error regarding the denial of front pay, the trial court did not properly consider whether reinstatement was feasible and therefore remanded for further

---

proceedings. *Id.* at 336-40. While the Fifth Circuit did not order the trial court to award reinstatement, the clear implication was that some form of prospective relief should be provided.

None of the cases Defendant cites to support denying front pay actually contradicts *Bogan*. Indeed, *Bogan* is one of the very cases Defendant cites. *See* Resp., Doc. 144 at 1. Further, the *Hansard* case Defendant cites is distinguished by *Bogan* as inapplicable because it does not "consider[ ] or affirm[ ] a judgment in which a plaintiff was denied any prospective relief." *Bogan*, 919 F.3d at 337 n.2. Finally, in the third case cited by Defendant, *Sellers v. Delgado College*, there is no indication in the opinion that reinstatement was not feasible. *See* 902 F.2d 1189, 1193-96 (5th Cir. 1990).

Here, Defendant agrees "reinstatement is not appropriate under the facts of this case." Resp., Doc. 144 at 1. Therefore, under *Bogan* and Fifth Circuit precedent, the other form of prospective relief—front pay—should be awarded. *See Bogan*, 919 F.3d at 336. Moreover, given the testimony from at least four witnesses—Ms. Johnson, Mr. Johnson, Padilla, and King—about the devasting effect of the incident report and Defendant's inability to fully remedy it as discussed below, two years not only seems appropriate, but rather conservative. Therefore, this Court should award $100,880, two years of front pay, as prospective relief.

II.  **In order to make Johnson whole, this Court should order Southwest Research to send the proposed letter attached as Exhibit 1A to the Personnel Security Management Office for Industry.**

This Court has broad equitable powers to "make possible the fashioning of the most complete relief available." *Peques*, 899 F.2d at 1453 (citing *Teamsters v. United States,* 431 U.S. 324, 364 (1977)) (quotations omitted). In fact, district courts have the "duty to render" such relief. *Teamsters*, 431 U.S. at 364 (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975)).

---

Here, under Presidential Policy Directive 19, those who administer security clearances are prohibited from taking any action affecting an individual's eligibility for access to classified information in retaliation for protected activity.  *See* PPD 19; Kuntz Decl., Ex. 1 at ¶ 4.  Under the DoD's Industrial Security Program, contractors must maintain accurate records on employees holding security clearances.  *See* Kuntz Decl., Ex. 1 at ¶ 5.  For former employees, the duty to ensure accurate information may be discharged by sending substantive corrective information to the DSS Personnel Security Management Office for Industry (PSMO-I).  *Id.* at ¶ 6.

Therefore, this Court should order Defendant to send such information.  Defendant mischaracterizes the equitable relief Johnson seeks.  Johnson is not asking this Court to order Defendant to physically change the JPAS incident report.  As both Defendant's declaration and Exhibit 1 make clear, doing that is not possible since Johnson no longer works for Defendant and reinstatement is not feasible.  Instead, Johnson seeks something much simpler and well within Defendant's capabilities.  Specifically, Johnson asks this Court to order Defendant to send the letter attached as Ex. 1A, or a substantially similar letter, to the DSS PSMO-I.  As Ms. Kuntz's declaration attached to this reply shows, not only may Defendant submit such substantive corrective information, but it also would satisfy Defendant's DoD Industrial Security Program duty to maintain accurate records.  *See* Ex. 1 and 1A.

The fact is Defendant submitted the incident report to JPAS because it terminated Johnson.  The jury found that Defendant's termination of Johnson was unlawful retaliation for her reports of sex discrimination.  Therefore, the incident report would not have been submitted to JPAS but for

Defendant's unlawful retaliation. This Court should use its equitable powers to help remedy the situation and "bar like discrimination in the future." *Teamsters*, 431 U.S. at 364.[1]

**III.   Egan is not implicated because this case does not involve reviewing the merits of security clearance decisions made by the executive.**

The *Egan* doctrine is the narrow judicial policy that "courts may not review decisions to grant access to sensitive information made *by the executive*." *Toy v. Holder*, 714 F.3d 881, 884 (5th Cir. 2013) (citing *Dep't of the Navy v. Egan*, 484 U.S. 518, 529 (1988)) (emphasis added).

*Egan* does not apply to Johnson's request for equitable relief because it does not involve reviewing security clearance decisions made by the executive. Rather, as described above, the requested equitable relief would merely require that Southwest Research Institute, a private company, send a letter to the DSS and DMDC requesting withdrawal of the incident report. The executive may then choose to act on Defendant's request or not, but Johnson is not asking this Court to direct the executive branch to do anything. Therefore, *Egan* does not apply.

**IV.   Defendant's own response defeats its waiver argument.**

Defendant argues that Plaintiff has waived her request for injunctive relief because it was not pled, but then literally a few sentences later admits that Johnson's original complaint states "Plaintiff seeks . . . retraction of any false incident report Defendant generated against her." *See* Resp. Doc. 144 at 5-6 (quoting Doc. 1 at 6 ¶ 49(f)). That quote is in the "Damages" section of Plaintiff's complaint. Obviously, Defendant was put on notice that Johnson sought such relief as

---

[1] An alternative to this equitable relief could be to significantly increase the front pay awarded to compensate Johnson for not being able to work on government projects that require security clearance, which was her field. However, Johnson would greatly prefer that this Court order Defendant to submit the letter in Exhibit 1A. This would put her in a better position for finding jobs in her field and reduce the need for an increase in front pay due to what would amount to continued irreparable harm if Defendant does not make efforts at remedial action.

damages. Moreover, at least four witnesses testified about the damage the incident report has on finding subsequent employment.

Defendant then quibbles with whether or not the jury verdict shows that the incident report is "false." The jury found that but for Johnson's reports of sex discrimination, she would not have been fired. The incident report does not say Johnson was fired for reporting sex discrimination. At best, the report is incomplete and inaccurate. At worst, it is false. Either way, the jury verdict shows Defendant should be ordered to attempt to fix this remnant of its unlawful conduct by providing the substantive corrective information in Exhibit 1A to the DSS PSMO-I.

## PRAYER

For the forgoing reasons, Plaintiff moves for judgment on the verdict, seeks front pay in the amount of $100,880 in lieu of reinstatement, and equitable relief ordering Southwest Research submit a letter in Exhibit 1A to the DSS PSMO-I, and for such other relief to which Plaintiff may be entitled.

Respectfully submitted,
WILEY WALSH, P.C.

By: _____/s/ Colin Walsh_____
Colin Walsh
Texas Bar No. 24079538
*Board Certified Specialist, Texas Board of Legal Specialization, Labor and Employment Law*
Jairo Castellanos
Texas Bar No. 24089264

WILEY WALSH, P.C.
1011 San Jacinto Blvd., Ste. 401
Austin, TX 78701
Telephone: (512) 27-5527
Facsimile: (512) 201-1263
colin@wileywalsh.com

Kalandra Wheeler
Texas Bar No. 24051512

*Board Certified Specialist, Texas Board of Legal Specialization, Labor and Employment Law*

ROB WILEY, P.C.
1651 Richmond Ave.,
Houston, TX 77006
Telephone: (713) 337-1333
Facsimile: (713) 337-1334
kwheeler@robwiley.com

ATTORNEYS FOR PLAINTIFF

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 26, 2019, I served a copy of the foregoing on counsel for Defendant via the Court's CM/ECF system.

<u>     /s/ Colin Walsh          </u>
Colin Walsh

---

Reply to Response to Motion for Judgment on the Verdict – Page 6