UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MARY ELLEN JOHNSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 5:15-cv-00297-RCL |
| ) | |
| SOUTHWEST RESEARCH INSTITUTE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Following a week-long trial, the jury rendered a verdict in favor of plaintiff Mary Ellen Johnson against defendant Southwest Research Institute (SwRI). The jury found SwRI terminated Johnson because of her reports of sex discrimination, which is activity protected by Title VII of the Civil Rights Act of 1964, and discriminated against Johnson based on her sex by providing Johnson with unequal tuition reimbursement. The jury awarded Johnson $260,000 in compensatory damages. The jury also determined Johnson was owed $335,624 in back pay, but this amount was reduced by $185,624 because of Johnson's failure to mitigate her damages, resulting in an award of $150,000 in back pay. In addition to these awards, Johnson seeks prejudgment interest, post-judgment interest, two years of front pay in lieu of reinstatement, and to have the Court order SwRI to send a letter to the Defense Security Service Personnel Security Management Office for Industry (DSS PSMO-I) to inform DSS PSMO-I of the jury's verdict and request the incident report regarding Johnson be rescinded. SwRI disputes that Johnson should be awarded front pay and contends it would be improper for the Court to order SwRI to send a letter requesting DSS PSMO-I rescind the incident report regarding Johnson.

1

## I. Compensatory Damages

The jury awarded Johnson $200,000 for "[p]ast pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life" and $60,000 for "[f]uture pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life." Verdict Form, ECF No. 142. This amounts to a $260,000 compensatory damage award.

Johnson will also be awarded prejudgment interest on the past compensatory damages. The Fifth Circuit has declared "[p]rejudgment interest should apply to all past injuries, including past emotional injuries . . . Refusing to award prejudgment interest ignores the time value of money and fails to make the plaintiff whole." *Thomas v. Texas Dep't of Criminal Justice*, 297 F.3d 361, 372 (5th Cir. 2002). In *Thomas*, the Fifth Circuit affirmed that prejudgment interest applies to both back pay and compensatory damage awards under Title VII, and asserted that "[b]ecause the jury found that the [plaintiff] suffered past emotional injuries, the district court was compelled to award prejudgment interest on those past injuries." *Id.*

Here, the jury awarded Johnson $200,000 in past compensatory damages for emotional injuries. Under *Thomas*, the Court will award prejudgment interest on the past compensatory damage award. Because there is no federal law setting the prejudgment interest rate here, the Court looks to state law for guidance on the applicable rate. *See Perez v. Bruister*, 823 F.3d 250, 274 (5th Cir. 2016) (turning to state law for guidance because the federal Employee Retirement Income Security Act does not set prejudgment interest rates). The Court therefore turns to Texas state law, as that is the applicable state law in this matter. The Texas Supreme Court has recognized two separate bases for the award of prejudgment interest: (1) an enabling statute; and (2) general principles of equity. *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998). Statutory prejudgment interest applies only to judgments in wrongful death,

personal injury, property damage, and condemnation cases. Tex. Fin. Code Ann. §§ 304.102, 304.201 (West 2019); *Kenneco*, 962 S.W.2d at 530. Here, Johnson is entitled to recover on her Title VII claims. Thus, any award of prejudgment interest is governed by the common law, rather than by statute. *Kenneco*, 962 S.W.2d at 530. The Texas Supreme Court has held that prejudgment interest accrues at the rate for post-judgment interest and is computed as simple interest. *Id.* at 532.

The Court looks to Texas state law on post-judgment interest rate as guidance for prejudgment interest rate. Under the Texas Finance Code, the post-judgment interest rate is "the prime rate as published by the Board of Governors of the Federal Reserve on the date of computation," unless that rate is less than five percent or greater than fifteen percent. Tex. Fin. Code Ann. § 304.003(c)(1) (West 2019). Currently, the prime rate is 5.50%. Selected Interest Rates (Daily), Board of Governors of the Federal Reserve System (May 21, 2019), https://www.federalreserve.gov/releases/h15/. The Court will calculate prejudgment interest using this rate. The amount of prejudgment interest per day is $30.1369863. "District courts generally should calculate interest on back pay and past damages based on the date of the adverse employment action." *Thomas*, 297 F.3d at 372. Here, the date of the adverse action is August 15, 2012, which is the date Johnson was informed of her termination. ECF No. 109. Therefore, the calculation of prejudgment interest should date back to August 16, 2012.[1] The Court awards prejudgment interest from this date to the date of judgment, May 22, 2019, which equals 2470 days. Thus, the prejudgment interest amount totals $74,438.36.

Accordingly, Johnson's award is $260,000 in compensatory damages and $74,438.36 in prejudgment interest on her past compensatory damage award. This totals $334,438.36 in

---

[1] SwRI does not oppose calculating prejudgment interest dating back to August 16, 2012. *See* Def.'s Resp., ECF No. 144.

3

compensatory damages. However, compensatory and punitive damages are capped at $300,000 for unlawful intentional discrimination under Title VII when the respondent has more than 500 employees, which is the case for SwRI. 42 U.S.C. § 1981a(b)(3). The Court must take into account the prejudgment interest award when determining whether Johnson's award exceeds the statutory cap because prejudgment interest is a calculation intended to account for the loss of the value of money based on the passage of time. Prejudgment interest is not a separate damage award. Because the jury's compensatory damage award plus prejudgment interest on the past compensatory damages exceeds $300,000, this statutory cap limits the compensatory damage award Johnson may receive. *See Hudson v. Chertoff*, 484 F. Supp. 2d 1275, 1278–79 (S.D. Fla. 2007). Johnson will therefore only be awarded $300,000 in compensatory damages.

Also, Johnson will be awarded post-judgment interest on this award. Post-judgment interest is "calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." 18 U.S.C. § 1961. The average rate of the 1-year constant maturity Treasury yield for the week preceding the date of this judgment was 2.324%. Selected Interest Rates (Daily), Board of Governors of the Federal Reserve System (May 21, 2019), https://www.federalreserve.gov/releases/h15/. Thus, Johnson will be awarded post-judgment interest on the compensatory damage award at a rate of 2.324% per annum from the date of this judgment, compounded annually, until paid.

**II.    Back Pay**

The jury awarded Johnson $150,000 in back pay. Back pay and interest on back pay are not considered compensatory damages under Title VII. *See* 42 U.S.C. § 1981a(b)(2) ("Compensatory damages awarded under this section shall not include backpay, interest on

backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964."). These amounts are therefore not subject to the statutory caps. Johnson will be awarded $150,000 in back pay.

Johnson will also be awarded prejudgment interest on this back pay award. Although the decision to award prejudgment interest on back pay is discretionary, *Gloria v. Valley Grain Productions, Inc.*, 72 F.3d 497, 500 (5th Cir. 1996), the Fifth Circuit has noted that "under Title VII interest is an item that 'should be included in back pay' to make a victim whole." *Pegues v. Mississippi State Employment Serv.*, 899 F.2d 1449, 1453 (5th Cir. 1990) (citing *Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 263 (5th Cir. 1974)). Refusal to award prejudgment interest ignores the time value of money. *Thomas*, 297 F.3d at 372. Again, because there is no federal law setting the prejudgment interest rate here, the Court looks to Texas state law for guidance on the applicable rate. *See Perez*, 823 F.3d at 274. For the reasons discussed *supra* in part I, the Court looks to Texas state law on post-judgment interest rate as guidance for the prejudgment interest rate and computes prejudgment interest as simple interest. Under the Texas Finance Code, the post-judgment interest rate is "the prime rate as published by the Board of Governors of the Federal Reserve on the date of computation," unless that rate is less than five percent or greater than fifteen percent. Tex. Fin. Code Ann. § 304.003(c)(1) (West 2019). Currently, the prime rate is 5.50%. Selected Interest Rates (Daily), Board of Governors of the Federal Reserve System (May 21, 2019), https://www.federalreserve.gov/releases/h15/. The Court will calculate prejudgment interest using this rate. The amount of prejudgment interest per day is $22.60274. "District courts generally should calculate interest on back pay and past damages based on the date of the adverse employment action." *Thomas*, 297 F.3d at 372. Here, the date of the adverse action is August 15, 2012. ECF No. 109. Therefore, the calculation of prejudgment interest should date back to August

16, 2012.[2] The Court awards prejudgment interest from this date to the date of judgment, May 22, 2019, which equals 2470 days. Thus, the prejudgment interest amount totals $55,828.77. Accordingly, Johnson will be awarded $150,000 in back pay and $55,828.77 in prejudgment interest on the back pay award. This totals $205,828.77. She will be awarded post-judgment interest on this award at a rate of 2.324% per annum from the date of this judgment, compounded annually, until paid.

### III.     Front Pay

Reinstatement or front pay is ordinarily appropriate when requested. *Bogan v. MTD Consumer Group, Inc.*, 919 F.3d 332, 336 (5th Cir. 2019). Although the preferred equitable relief is reinstatement, front pay is appropriate when reinstatement is not feasible. *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 869 (5th Cir. 1991). Here, Johnson does not seek reinstatement and believes reinstatement is not feasible. SwRI also does not believe reinstatement is appropriate in this situation. Thus, both parties agree reinstatement is not the proper remedy. This leaves the Court to examine whether front pay is appropriate in lieu of reinstatement.

The Fifth Circuit has recognized that "if reinstatement is not feasible, front pay is the appropriate award." *Weaver v. Amoco Production Co.*, 66 F.3d 85, 88 (5th Cir. 1995). This strongly indicates front pay should be awarded to Johnson as a prevailing Title VII plaintiff. SwRI argues front pay is inappropriate in light of the jury's finding that Johnson failed to mitigate her damages, which resulted in her back pay award being reduced. SwRI further contends Johnson's failure to maintain the employment she was able to find bolsters its position she should not be awarded front pay.

---

[2] SwRI does not oppose calculating prejudgment interest dating back to August 16, 2012. *See* Def.'s Resp., ECF No. 144.

6

The Court accepts the jury's determination as the factfinder that Johnson was discriminated against and deserves to be awarded damages to make her whole. Johnson has had difficulty obtaining substantially equivalent employment since SwRI terminated her. This is likely not only due to her failure to exercise reasonable diligence in seeking, obtaining, and maintaining substantially equivalent employment after the date of her termination but also because prospective employers learned she was fired. And as her length of unemployment grew over time, prospective employers likely became wearier about hiring her. Johnson's lack of reasonable diligence only accounts for some of her present failure to obtain substantially equivalent employment. SwRI's wrongful termination of Johnson has also contributed to this failure. Therefore, the Court finds it is appropriate to award Johnson front pay. However, the Court also accepts the jury found Johnson failed to mitigate her damages and reduced her back pay award accordingly. It is most appropriate to reduce Johnson's front pay award by the same percentage as the jury reduced her back pay.

Johnson seeks two years of front pay, which would amount to $100,880. The jury awarded Johnson 44.69287% of her back pay. Based on this, Johnson's front pay award will be 44.69287% of $100,880, which amounts to $45,086.17. She will be awarded post-judgment interest on this award at a rate of 2.324% per annum from the date of this judgment, compounded annually, until paid.

## IV.   Other Injunctive or Equitable Relief

Finally, Johnson asks the Court to order SwRI to send a letter to DSS PSMO-I informing DSS PSMO-I of the jury's finding that Johnson would not have been terminated but for her complaints of sex discrimination and requesting DSS PSMO-I rescind the incident report. On the day Johnson was terminated, SwRI provided information that resulted in an incident report stating:

> Ms. Johnson's employment was terminated for cause on 8/15/12, due to her falsifying timesheet records and excessive tardiness. Her actions constitute fraud

7

and unreliable behavior and are evidence of the misuse of employer's time and/or resources which call into question her honesty, integrity and trustworthiness. Ms. Johnson has had access to very sensitive classified information. The concern is that as a result of her termination, Ms. Johnson may pose a security risk by becoming an "insider threat".

Johnson argues it is within the Court's broad equitable powers to make the victims of discrimination whole under Title VII to order SwRI to send the requested letter. The Fifth Circuit has held "[t]he aim of Title VII relief, whether back-pay, retroactive seniority, or other injunctive relief, is thus to make whole the victims of discrimination according to what would have been their experience in a non-discriminatory work setting. *Claiborne v. Illinois Cent. R.R.*, 583 F.2d 143, 149 (5th Cir. 1978). "Congress vested broad equitable powers in Title VII courts 'to make possible the fashioning of the most complete relief possible.'" *Pegues*, 899 F.2d at 1453 (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 364 (1977).

Although Johnson did not present evidence regarding the process for amending or rescinding an incident report during trial, Johnson's original complaint states "Plaintiff seeks . . . retraction of any false incident reports Defendant generated against her." Coml., ECF No. 1. Therefore, Johnson has not waived her right to seek this relief.

Johnson first asked this Court to "order Southwest Research to submit a letter or other communication to JPAS [the Joint Personnel Adjudication System] rescinding its adverse information report, stating that it no longer considers Johnson an insider threat, and notifying JPAS of the jury verdict finding that Johnson would not have been terminated but for her reports of sex discrimination." Pl.'s Mot. J. on the Verdict, ECF No. 143. However, SwRI responded it could no longer access Johnson's JPAS profile to attempt to submit any additional information regarding Johnson because it was her former employer. Def.'s Resp., ECF No. 144. Johnson's reply then altered her request, and asked the Court to order SwRI to send a letter to DSS PSMO-I providing

information on the jury's verdict and requesting DSS PSMO-I rescind the incident report. Pl.'s Reply, ECF No. 145. Because Johnson modified her requested relief in her reply and presented new evidence in support of her request, the Court will grant SwRI's motion to file a sur-reply and consider SwRI's response to Johnson's new argument and evidence. *See Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004) (noting that, when considering summary judgment, a "district court may rely on arguments and evidence presented for the first time in a reply brief as long as the court gives the nonmovant an adequate opportunity to respond"); *Racetrac Petroleum, Inc. v. J.J.'s Fast Stop, Inc.*, No. 3:01-cv-1397, 2003 WL 251318, at *18 (N.D. Tex. Feb. 3, 2003) ("The purpose for having a motion, response, and reply is to give the movant the final opportunity to be heard. A sur-reply is appropriate by the non-movant only when the movant raises new legal theories or attempts to present new evidence at the reply stage.").

The Court finds it is appropriate to require SwRI to send a letter to DSS PSMO-I informing DSS PSMO-I the jury determined Johnson would not have been terminated but for her complaints of sex discrimination and requesting DSS PSMO-I withdraw the incident report about Johnson. The jury spoke very clearly with its verdict that SwRI's conduct was wrongful. The Court must fashion the most complete relief possible to make Johnson whole. This includes granting the desired additional relief. This relief is necessary because the incident report likely severely diminishes Johnson's ability to obtain substantially equivalent employment. Purely monetary damages are not sufficient to compensate Johnson for her injury. Unless SwRI is required to submit a letter acknowledging the jury found it terminated Johnson in retaliation for her reports of sex discrimination, Johnson will likely continue to suffer the effects of SwRI's retaliatory actions. Such a letter may better inform an organization about the unlawful circumstances of Johnson's termination, thereby reducing the negative effects of the incident report on JPAS and making it

more likely the organization will not be dissuaded by the report from potentially offering Johnson employment. Thus, this additional relief is warranted.

This relief is not prohibited by the *Egan* doctrine as SwRI contends. The *Egan* doctrine precludes judicial scrutiny of "sensitive and inherently discretionary judgment call[s]" made by the Executive Branch. *See Egan*, 484 U.S. at 527; *Perez v. F.B.I.*, 71 F.3d 513, 514 (5th Cir. 1995) (per curiam); *see also Toy v. Holder*, 714 F.3d 881, 884–85 (5th Cir. 2013). In the context of a Title VII challenge, the Fifth Circuit has held that such scrutiny must be barred when it constitutes "an impermissible intrusion by the Judicial Branch into the authority of the Executive Branch over matters of national security." *Perez*, 71 F.3d at 514. Johnson's requested relief does not intrude upon the Executive Branch's national security authority. In fact, the relief granted by the Court does not involve any review of security clearance decisions. Rather, the Court is solely requiring SwRI, a private company, to send a letter informing DSS PSMO-I of the jury's verdict and requesting the incident report be withdrawn. This does not infringe upon the Executive Branch's authority to make a future determination about whether Johnson should be granted a security clearance if she obtains employment requiring one.

Further, SwRI's argument this case bears similarities to cases in which courts have extended the *Egan* doctrine to private employers and situations where a security clearance was not at issue is unpersuasive. In *Beattie v. Boeing Co.*, 43 F.3d 559 (10th Cir. 1994), a former Boeing employee filed a *Bivens* suit against the company after he was denied an access clearance to the secure area in which Boeing was building Air Force One planes for the President. The contract between Boeing and the Air Force provided the Air Force could grant unescorted access clearances and Boeing could grant escorted access clearances, which allowed for an individual to have access to the secured area when accompanied by a person with an unescorted access clearance. *Id.* at 560.

10

The Air Force had the ability to override Boeing's grants of clearances and the contract set forth the criteria for obtaining access clearances. *Id.* In concluding *Egan* precluded recognizing a *Bivens* claim, the Tenth Circuit treated the clearance determination by Boeing, a private company, in the same manner as a clearance decision made by the Air Force because Boeing's limited authority to grant or deny escorted access clearances derived solely from its contract with the Air Force. *Id.* at 566. Therefore, Boeing's authority had been delegated to it by the Executive Branch. *Id.* Here, the decision of whether to grant, deny, or rescind Johnson's clearance was never delegated to SwRI—this authority was always maintained by the Executive Branch. Ordering SwRI to inform DSS PSMO-I of the jury's verdict and requesting the incident report be withdrawn based on the jury's findings does not constitute judicial intrusion into the predictive security judgment of whether Johnson should be granted a security clearance. This relief does not compel any organization to grant Johnson a security clearance. In addition, this letter does not intrude upon the Executive Branch's expertise and constitutional authority to make decisions regarding national security beyond security clearance determinations, as the letter does not compel the Executive Branch to take any action. Thus, *Egan* is inapplicable to this case.

The Court will grant Johnson's request to order SwRI to send a letter informing DSS PSMO-I the jury found Johnson was terminated in retaliation for her complaints of sex discrimination, rather than for the reasons stated in the incident report submitted August 15, 2012. The Court will also order SwRI to request that DSS PSMO-I withdraw the incident report based on the jury's verdict.

### V. Conclusion

Accordingly, Johnson will be awarded $300,000 in compensatory damages, $150,000 in back pay and $55,828.77 in prejudgment interest on the back pay award, and $45,086.17 in front

pay. Johnson will be awarded post-judgment interest on these awards at a rate of 2.324% per annum from the date of this judgment, compounded annually, until paid. Further, the Court will grant Johnson's request to order SwRI to send a letter to DSS PSMO-I informing DSS PSMO-I the jury found Johnson was terminated in retaliation for her complaints of sex discrimination, rather than for the reasons stated in the incident report submitted August 15, 2012, and requesting DSS PSMO-I withdraw the incident report. Finally, Johnson is entitled to attorney's fees and costs, which will be determined upon motion under Federal Rule of Civil Procedure 54. A separate order shall issue.

SIGNED this 22 day of May, 2019.

_____
Royce C. Lamberth
United States District Judge